Michael Bertucci
AGRUSS LAW FIRM, LLC
4809 N. Ravenswood Avenue, Suite 419
Chicago, IL 60640
312-224-4695 – telephone
mbertucci@agrusslawfirm.com
Admitted *Pro Hac Vice*

*Attorney for Plaintiff*,
PRESCILLA PETRILLO

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

PRESCILLA PETRILLO,                )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )
                                   )        Case No. 3:22-cv-00261-MMD-CLB
PINNACLE SERVICES INC dba          )
SUMMIT COLLECTION SERVICES         )
                                   )
        Defendant.                 )

## PLAINTIFF'S EMERGENCY MOTION TO COMPEL DISCOVERY

NOW COMES the Plaintiff, PRESCILLA PETRILLO ("Plaintiff"), by and through her

attorneys, and moves this Court for an order compelling Defendant, PINNACLE SERVICES INC. dba

SUMMIT COLLECTION SERVICES ("Defendant") to answer written discovery by January 20, 2023,

states as follows:

## FACTS

This is a debt collection harassment case involving the Fair Debt Collection Practices Act

(FDCPA), 15 USC 1692 *et seq*. The alleged debt was falsely created by a Botox service company

following a dispute between Plaintiff and the company. Plaintiff does not owe the alleged debt in

question. On June 7, 2021, Defendant sent a letter to Plaintiff which falsely threatened to report the

alleged debt to "a National Credit Bureau" if she did not pay the debt within 30 days. Plaintiff did not

1

pay the debt, and Defendant did not report it to any credit bureau. Defendant's false threat violates section 1692e(5) of the FDCPA, which prohibits "the threat to take any action… that is not intended to be taken." On June 14, 2021, Defendant left a voicemail message for Plaintiff which did not disclose Defendant's identity, in violation of section 1692d(6) of the FDCPA (prohibiting "the placement of telephone calls without meaningful disclosure of the caller's identity") and which did not disclose that the communication was from a debt collector and that any information would be used to collect the debt, in violation of section 1692e(11) of the FDCPA.[1] Defendant's voicemail is nearly identical to the voicemail in *Forkum v. Co–Operative Adjustment Bureau, Inc*., 44 F.Supp.3d 959 (2014), wherein the Court granted the plaintiff's motion for summary judgment. Despite the foregoing, Defendant has refused to offer more than $500 to settle this case after it was filed, and has refused to answer discovery regarding the date of the voicemail and other communications.

### PROCEDURAL POSTURE AND BACKGROUND

Plaintiff filed the instant complaint on June 9, 2022. On September 9, 2022, Plaintiff served her Rule 26(a)(1) initial disclosures on Defendant. Defendant has refused to serve its initial disclosures despite numerous requests from Plaintiff.

On October 4, 2022, Plaintiff served her first set of Interrogatories and first set of Requests to Produce on Defendant. Plaintiff's Interrogatory #15 specifically requested the date, method, and substance of each communication with Plaintiff. See Exhibit A. On November 2, 2022, Defendant served its "responses" to discovery. However, Defendant failed to substantively respond to most of the Interrogatories (including Interrogatory #15) and Requests for Production. Rather than answering the

---

[1] 15 USC 1692e(11) "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action."

interrogatories, many of Defendant's responses merely referenced the Debtor History Report (attached to the responses as Exhibit 1) which did not contain responsive answers. See Exhibit A. The Debtor History Report (the "Report") contains dozens of unintelligible abbreviations, codes, and other notes. See Exhibit A. For example, the Report contains one note for June 14, 2021, which states "no block 1869# lmom for both." It does not make clear that the voicemail was left on June 14, or whether the voicemail was the first verbal communication with Plaintiff. Moreover, Defendant failed to reveal the meaning of "lmom" in response to Plaintiff's Interrogatory #7, which states: "List and explain all abbreviations, codes, letters, numerals, or symbols used by the Defendant in its records and/or collection notes." See Exhibit A.

Soon after Defendant served its responses to discovery, counsel for Plaintiff called counsel for Defendant and discussed the matter over the telephone. During that call, counsel for Defendant could not confirm, based on his own discovery answers and Defendant's Report, when the first voicemail to Plaintiff was left on her telephone. Counsel for Defendant claimed there were previous verbal communications and argued that the voicemail in question therefore did not violate the FDCPA. Counsel for Defendant agreed to look into the timing of the call and provide such information to counsel to Plaintiff. The parties' attorneys subsequently exchanged numerous emails discussing the matter and engaged in additional telephonic conferences, but counsel for Defendant could not confirm the date of the voicemail.

In an effort to avoid motion practice and resolve the matter amicably, counsel for Plaintiff sent an email to counsel for Defendant on November 23, 2022, asking if any of Defendant's employees spoke to Plaintiff prior to June 14, 2021. See Exhibit B. Counsel for Defendant did not respond. Counsel for Plaintiff again emailed counsel for Defendant on December 2, 2022, asking if the June 14, 2021, email was Defendant's first communication with Plaintiff. Counsel for Defendant again did not

respond. Counsel for Plaintiff followed up via email on December 9, 2022, and December 14, 2022, to no avail. The parties subsequently held another telephonic conference wherein counsel for Plaintiff again explained that Defendant's Report did not clearly identify the date of the voicemail, or prior or subsequent communications. Counsel for Defendant agreed to review the Report with his client and confirm with counsel for Plaintiff the date of the voicemail. Counsel for Defendant never obtained the requested information.

On December 28, 2022, Plaintiff served a Rule 37 letter on Defendant which discussed the deficiencies in Defendant's discovery answers. See Exhibit C. On January 5, 2023, counsel for the parties and the owner of Defendant, Brian Chew, engaged in a telephonic conference pursuant to Local Rule 26-6. During that conference, the parties narrowed the discovery issues to Interrogatory Nos. 7, 14, and 15. See Exhibit D. In addition, the parties discussed Defendant's letter which threatened to report Plaintiff's alleged debt to the credit bureaus. Defendant claimed that the debt was, in fact, reported, because Defendant's system automatically reports the debts every day. Counsel for Plaintiff requested documentation evidencing that the debt was reported, or that Defendant's system automatically reports all debts, which Defendant agreed to provide. Finally, the parties discussed Interrogatory #14, which states: "State in detail the facts upon which you rely for each affirmative defense listed in your Answer." Rather than listing facts, Defendant listed "the Fair Debt Collection Practices Act, Nevada Revised Statutes," and "case law." See Exhibit A. Defendant claimed for the first time during the parties' January 5 conference that the debt was not a consumer debt covered by the FDCPA because, despite evidence to the contrary, Plaintiff was purportedly engaged in corporate espionage. Counsel for Plaintiff requested that Defendant fully answer Interrogatory #14. Defendant requested an email which summarized the outstanding discovery issues, and Defendant agreed to

amend his discovery answers the following day (Friday, January 6, 2023) or the following Monday (January 9, 2023). See Exhibit D.

On the evening of January 9, 2023, counsel for Defendant advised that a handful of Defendant's employees were out of the office, and so Defendant would not be able to provide amended discovery answers until January 13, 2023. On January 13, 2023, Defendant did not provide amended discovery answers. As of the date of this filing, Defendant has not provided the agreed-upon amended discovery answers.

LAW

## I.    Interrogatories

FRCP 33 requires that "each interrogatory must… be answered separately and fully in writing." "Rule 37(a)(3) explicitly provides that an evasive or incomplete disclosure, answer, or response to a discovery obligation 'is to be treated as a failure to disclose, answer, or respond.' " *Risinger v. SOC, LLC*, 306 F.R.D. 655, 662 (D. Nev. 2015) (quoting Rule 37). It is well established that " '[A]n answer to an interrogatory must be responsive to the question. It should be complete in itself and not refer to the pleadings, or to depositions or other documents, or to other interrogatories… Incorporation by referece is not a responsive answer.' " *Lawman v. City and County of San Francisco*, 159 F.Supp.3d 1130, 1140 (N.D. Cal. 2016) (quoting *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000)). "Answers to interrogatories should be in such form that they may be used upon a trial, as Rule 33 contemplates." *J.J. Delaney Carpet Co. v. Forrest Mills, Inc*., 34 F.R.D. 152, 153 (S.D.N.Y. 1963); *Woods v. Kraft Foods, Inc*., 2006 WL 2724096 *4 (E.D. Cal. 2006)

## II.   Requests to Produce

A party has a duty to cooperate with discovery and violates that duty by providing evasive and incomplete answers. *Airtex Corp. v. Shelly Radiant Ceiling Co*., 536 F.2d 145, 155 (7th Cir. 1976).

Fed. R. Civ. P. 34(b)(2)(B) states that in responding to a request for production of documents, "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."

### III.     Rule 26(a)(1) Initial Disclosures

The main purpose of Rule 26(a)(1) disclosures "is to accelerate the exchange of basic information about the case and to eliminate the paperwork involved in requesting such information." See Advisory Committee Notes, Fed. R. Civ. P. 26. Initial disclosures should provide the parties with information essential to the proper litigation of all relevant facts and to eliminate surprise and promote settlement. *Id*. In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship with respect to the disclosure obligations." *Id*. "A central goal of all versions of initial disclosure has been to get out basic information at an early point." *F.T.C. v. AMG Services, Inc.*, 2014 WL 317781 *7 (D. Nev. 2014) (quoting Wright, Miller, & Marcus, Federal Practice and Procedure: Civil 2d § 2053 (3d ed. 2010)).

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure provides that a party must provide to the other parties:

"(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party

has in its possession, custody, or control and may use to support its claims or

defenses, unless the use would be solely for impeachment."

## ARGUMENT

Here, Defendant agreed to amend answer to Interrogatory Nos. 7 and 15. Plaintiff additionally requests that Defendant answer Interrogatory No. 14, produce evidence of Defendant reporting the debt to the credit bureaus as requested, and serve initial disclosures. Notably, the discovery deadline in this case is May 1, 2023. Defendant's continued delays and gamesmanship should not be tolerated.

## I.     Interrogatories

**Plaintiff's Interrogatory #7 States**: "List and explain all abbreviations, codes, letters, numerals, or symbols used by Defendant in its records and/or collection notes."

Defendant answered as follows: "DC: Debtors Current, X= MaIe, Y= Femalee EMp= Employment, Letter l-L = Notice of Assignment, NTC= Not to Call, ACT= Account, DIS: Dispute, HLD= Hold, CAR = Cancel & Return, HB= Hot Box."

Notably, as discussed above Defendant failed to define the abbreviation "lmom" which is listed in the June 14, 2021 notes. Defendant additionally failed to define other abbreviations such as "nml" and "ids." See Exhibit A. Interrogatory #7 should be answered in full so Plaintiff can interpret Defendant's Report.

**Plaintiff's Interrogatory #15 States**: "Identify and describe each communication, or attempted communication, between Defendant and Plaintiff, or any third person, which was made in connection with the collection of the alleged debt Defendant is contacting Plaintiff about, by stating the following:

a. The name and alias of the individual initiating the communication;

b. The name of the person and/or description of the person to whom the communication was directed;

c. The date and time of the communication;

d. The method of the communication (e.g. letter, phone call, e-mail, text message, in-person, etc.);

e. A detailed description of the substance of the communication, (do not simply refer to collection notes);

f. Identification of all witnesses to or participants in the communication; and

g. Any actions taken by any Defendant as a result of the communication."

Defendant answered as follows:

a.   "Debbie Turner aka Debbie Clark.

b.   See Exhibit #1 of Defendants first set of Production of Documents.

c.   See Exhibit #1 of Defendants first set of Production of Documents.

d.   See Exhibit #1 of Defendants first set of Production of Documents.

e.   See Exhibit #1 of Defendants first set of Production of Documents.

f.   The only witnesses know are the individuals described on the specific dates and times as Documented in Exhibit #1 of Defendants first set of Production of Documents.

g.   See Exhibit #1 of Defendants first set of Production of Documents."

Notably, Defendant's Exhibit #1, the Report, does not answer any part of the interrogatory, other than the name of one individual who initiated one communication. The Report does not identify which notes demonstrate that a communication took place, let alone the date, method, or substance of the communications, as requested by the interrogatory. See Exhibit A. Interrogatory #15 should be answered in full so Plaintiff can interpret Defendant's Report and determine all communications between the parties.

**Plaintiff's Interrogatory #14 States**: "State in detail the facts upon which you rely for each affirmative defense listed in your Answer.

Defendant answered as follows: "DEFENDANTS RELY ON THE FAIR DEBT AND COLLECTION PRACTICES ACT, NEVADA REVISED STATUTES, THE COPIOUS AMOUNTS OF CASE LAW AND DECISIONS F'ROM STATE, CIRCUIT AND SURPREME COURTS."

Defendant's answer does not include any facts, as requested by the interrogatory. Indeed, Defendant revealed for the first time on January 5, 2023—eight weeks after discovery was initially answered—that he believed this was a case of corporate espionage. Interrogatory #14 should be answered in its entirety.

## II.     Requests to Produce

During the parties' LR 26-6 conference, Defendant agreed to produce evidence that it reported Plaintiff's debt to the credit bureaus, or that it automatically reports all debts to the bureaus. To date, Defendant has failed to produce such documentation. Given that Defendant's false threat to report the debt is one of Plaintiff's main allegations, and that Defendant agreed to provide the documentation, Defendant should be required to produce evidence of its credit reporting.

## III.     Rule 26(a)(1) Initial Disclosures

As stated above, Defendant has refused to produce its initial disclosures despite numerous written and verbal requests from Plaintiff. Notably, Defendant did not disclose the names of individuals who called Plaintiff or who sent her the letter threatening to report the debt to the credit bureaus pursuant to Rule 26(a)(1)(A)(i). Nor did defendant disclose any documents to support its defense pursuant to Rule 26(a)(1)(A)(ii). While "[t]he goal of the initial disclosure requirement is to get out basic information about the case at an early point" (*Stamps*, 232 F.R.D. 419 (N.D. Ga. 2005)), here

Defendant has refused to provide basic information nearly eleven weeks after initially "answering" discovery.

### ATTORNEY'S FEES AND EXPENSES

FRCP 37 allows the court to impose a wide range of sanctions when a party fails to comply with the rules of discovery. *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); Fed. R. Civ. P. 37. "Federal Rule of Civil Procedure 37(a)(5) provides that if the court grants a motion to compel discovery, it 'must' order the non-moving party to pay the moving party's "reasonable expenses incurred in making the motion…' " including attorney's fees. *Blair v. CBE Group, Inc*., 2014 WL 4658731 *1 (S.D. Cal. 2014) (citing Fed. R. Civ. P. 37(a)(5)(A). FRCP 37(a)(5)(A) requires courts to impose an award of attorney's fees and expenses in connection with a discovery motion unless the court finds that one of the limited exceptions applies: (1) the moving party filed the motion before a good faith attempt to obtain the discovery without court action, (2) the opposing party was substantially justified, or (3) other circumstances which make a sanctions award unjust. Fed. R. Civ. P 37(a)(5)(A). None of those exceptions apply here. Finally, the Rule mandates an award for expenses and attorney's fees (unless an exception applies) even when a party turns over discovery before being ordered to do so, so long as the materials were produced after the motion to compel is filed. *Id*; *Adelman v. Boy Scouts of Am*., 276 F.R.D. 681, 699 (S.D. Fla. 2011).

Here, Defendant has yet to amend its discovery answers pursuant to its promise during the parties' LR 26-6 conference. Plaintiff is therefore entitled to and seeks attorney's fees should Defendant serve amended discovery answers after the instant motion is filed.

### CONCLUSION

For the foregoing reasons, Defendant should amend the aforementioned discovery answers and re-imburse Plaintiff's attorney's fees for the drafting of the instant motion.

WHEREFORE, Plaintiff respectfully requests that this honorable Court enter an order:

1.  Directing Defendant to amend and fully answer Plaintiff's Interrogatory Nos. 7, 14, and 15 by January 20, 2023;

2.  Directing Defendant to produce evidence that it reported Plaintiff's debt to the credit bureaus by January 20, 2023;

3.  Requiring Defendant to reimburse Plaintiff's attorney's fees for the drafting of this motion; and

4.  For any other relief that this Court deems appropriate.


RESPECTFULLY SUBMITTED,

DATED:  January 17, 2023          By: /s/ Michael R. Bertucci
                                  Michael R. Bertucci (ILBA #6326591)
                                  Agruss Law Firm, LLC
                                  4809 N. Ravenswood Ave.
                                  Suite 419
                                  Chicago, Illinois 60640
                                  Tel: 312-224-4695
                                  Fax: 312-253-4451
                                  mbertucci@agrusslawfirm.com
                                  Attorney for Plaintiff
                                  Admitted *Pro Hac Vice*

## PROOF OF SERVICE

I certify that I electronically served the foregoing document to the following parties:

Clifton Young, Esq.
Cliffyounglaw@yahoo.com
Attorney for Defendant

     Executed on January 17, 2023.

                         By: /s/  Michael R. Bertucci
                                 Michael R. Bertucci

# EXHIBIT A

CliftonYoung, Esq.
Nevada Bar No. 1223
Summit Collection Services
80 Continental Drive, Suite 101
Reno, Nevada 89509
(775) 323-1898
Legal@SummitCollectionServices.Net
***Attorney for Defendant***

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

PRESCILLA PETRILLO,

        Plaintiff,

vs.

PINNACLE SERVICES, INC DBA SUMMIT
COLLECTION SERVICES,

        Defendant

NO. 22-CV-00261-MMD-CLB

## **DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

    To: Plaintiff, PRESCILLA PETRILLO and her counsel of record, Agruss Law

Firm, LLC.  Defendant, PINNACLE SERVICES, INC dba SUMMIT COLLECTION

SERVICES answers the following Interrogatories as follows:

## **INTERROGATORIES**

1.  State the full name of the person or persons answering these interrogatories, his/her

current business address, his/her current job and title, his/her current boss, and years working at

his/her current job.

**RESPONSE:  Brian C. Chew, Manager of Summit Collection Services 80 Continental**

**Drive Suite 101 Reno, Nevada  89509 since May 25, 2005.**

2. Identify, each document reviewed, referred to, or consulted by Defendant in the preparation of

the answers to these interrogatories'

**RESPONSE: Debtor History Report. See Exhibit #1 of Defendants first set of**

NO. 22-CV-00261-MMD-CLB - 1

**Production of Documents.**

3.  Identify all persons known to Defendant to have personal knowledge of any facts or issues involved in this lawsuit.

**RESPONSE: Debbie Clark, Collector.  Brian C. Chew, Manager. PRESCILLA**

**PETRILLO, PLAINTIFF.**

4.  Describe the Fair Debt Collection Practices Act ("FDCPA") and the Nevada Deceptive

Trade Practice Act ("NDTPA") training, including the title or other identifying information of

manuals, memorandum, or other documents used, provided to each employee who was

communications with involved in the attempt to collect from Plaintiff and/or any Plaintiff.

**RESPONSE: Monthly employee meetings reviewing the FDCPA, NRS 649 and the monthly publications of  The Writ, The Nevada Lawyer and the American Collector Association of published judicial decisions involving the collection industry.**

5.  What type of computer system and program does Defendant use to record text messages,

mai1, telephone calls, or other forms of communications, or attempted communications, with

persons or third parties in connection with the collection of debts.

**RESPONSE:  Debtmaster by Comtronic Systems LLC**

6.  Did Defendant electronically record, tape, or preserve text messages sent between

Defendant and Plaintiff, or third parties, telephone calls between Defendant and plaintiff, or third

parties, or voicemail messages Defendant left for Plaintiff or third parties regarding the alleged

debt?

> a. If so, how many calls were recorded and who is in possession of the recordings,
> b. If so, how many text messages were preserved and who is in possession of the
> messages.

**RESPONSE: All communications are documented in Debt master. See Exhibit #1 of Defendants first set of Production of Documents.**

7. List and explain all abbreviations, codes, letters, numerals, or symbols used by the

Defendant in its records and/or collection notes

**RESPONSE:  DC= Debtors Current, X= Male, Y= Female, EMP= Employment, Letter**

**1_1 = Notice of Assignment,  NTC= Not to Call, ACT= Account, DIS = Dispute, HLD= Hold, CAR = Cancel & Return, HB= Hot Box.**

NO. 22-CV-00261-MMD-CLB - 2

8. Identify all persons other than Plaintiff with whom you communicated about Plaintiff's alleged debt after you began collection efforts regarding the alleged debt you sought to collect

**RESPONSE: All collection activity is documented in Exhibit #1 of Defendants first set of Production of Documents.**

9. State all addresses and telephone numbers that Defendant used to contact Plaintiff and third parties and whether the communication was oral or written.

**RESPONSE: See Exhibit #1 of Defendants first set of Production of Documents.**

10. Identify the full legal name, complete address, and telephone number of the original creditor to whom the debt is owed and that Defendant is trying to collect on,

**RESPONSE: ALL IN ARBOR, LLC.  528 SOUTH MAIN STREET # 42 YERINGTON NEVADA. 971 221-2359**

11. How many days, weeks, or months did Defendant call and send text messages to Plaintiff and third parties in an attempt to collect Plaintiff s alleged debt?

**RESPONSE: See Exhibit #1 of Defendants first set of Production of Documents.**

12, Identify and describe each document and record known to Defendant which is related to Plaintiff s alleged debt.

**RESPONSE: See Exhibit #1 of Defendants first set of Production of Documents.**

13. State the date the original creditor charged off the debt and with whom.
**RESPONSE: UNKNOWN**

14. State in detail the facts upon which you rely for each affirmative defense listed in your Answer
.
**RESPONSE:  DEFENDANTS RELY ON THE FAIR DEBT AND COLLECTION PRACTICES ACT, NEVADA REVISED STATUTES, THE COPIOUS AMOUNTS OF CASE LAW AND DECISIONS FROM STATE, CIRCUIT AND SURPREME COURTS.**

15. Identify and describe each communication, or attempted communication, between

Defendant and Plaintiff, or any third person, which was made in connection with the collection of the alleged debt Defendant is contacting Plaintiff about, by stating the following:

    a.   The name and alias of the individual initiating the communication;
           Debbie Turner aka Debbie Clark.
    b. The name of the person and/or description of the person to whom the communication was directed; **See Exhibit #1 of Defendants first set of Production of Documents**

    c. The date and time of the communication; **See Exhibit #1 of Defendants first set of Production of Documents**

    d. The method of the communication (e.g. letter, phone call, e-mail, text message, in-person, etc.); **See Exhibit #1 of Defendants first set of Production of Documents**

    e. A detailed description of the substance of the communication, (do not simply refer to collection notes); **See Exhibit #1 of Defendants first set of Production of Documents**

    f. Identification of all witnesses to or participants in the communication;

**The only witnesses know are the individuals described on the specific dates and times as Documented in Exhibit #1 of Defendants first set of Production of Documents**

    g. Any actions taken by any Defendant as a result of the communication.
**See Exhibit #1 of Defendants first set of Production of Documents**

**RESPONSE: As stated in a, b, c, d, e, f , & g.**

16. State whether Defendant is a third-party collector or debt buyer for Plaintiff s alleged debt.

**RESPONSE: Defendant is a Collection Agency operating on a contingency basis.**

17. State whether Defendant has ever caused a lawsuit to be filed in an attempt to collect a debt, including against Plaintiff.

**RESPONSE: Yes, Defendant has filed 100 's of lawsuits.**

18. Describe Defendant's policies and/or procedures for verifying disputed debts. **RESPONSE: When a dispute is received from a debtor, the dispute is forwarded to the assignor for their response. A Verification of Debt is sent to the debtor.**

19, Describe the specific basis for (1) attempting to collect from Plaintiff, and (2) verifying, an "account fee" as listed in the verification invoice sent from Defendant to Plaintiff (See Exhibit 1).

**RESPONSE: See Exhibit #1 of Defendants first set of Production of Documents**

20, Describe the specific basis for (1) attempting to collect from Plaintiff, and (2) verifying, a "collection fee" as listed in the verification invoice sent from Defendant to Plaintiff.

(See Exhibit I)

**RESPONSE: See Exhibit #1 of Defendants first set of Production of Documents. See RESPONSE #18 of Defendants answers to 1st set of interrogatories. : When a dispute is received from a debtor, the dispute is forwarded to the assignor for their response. A Verification of Debt is sent to the debtor.**

21. Describe the specific basis for charging Plaintiff interest on the account as indicated in the June 7 ,2021 letter sent from Defendant to Plaintiff.

**RESPONSE: Nevada Revised Statue 99.040**

22. Identify any statements, information, and/or documents known to you and requested by any of the foregoing interrogatories, which you claim to be work product or subject to any common 1aw or statutory privilege, and with respect to each interrogatory, specify the legal basis for the claim.

**RESPONSE: AS DESCRIBED IN EACH RESPONSE.**

DATED: this 02nd day of November 2022.

By: /s/ Clifton Young Esq.
Clifton Young, Esq., Attorney for Defendant
Pinnacle Services Inc., dba Summit Collection Services

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing DEFENDANTS ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES were electronically served to the following parties.

ARGUSS LAW FIRM

mbertucci@agrusslawfitm.com.

DATED: this 03rd day of November 2022.

/s/ Clifton Young, Esq.
Clifton Young, Esq., Attorney for Defendant.

1  Clifton Young, Esq.
   Nevada Bar No. 1223
2  Summit Collection Services
   80 Continental Drive, Suite 101
3  Reno, Nevada 89509
   (775) 323-1898
4  Legal@SummitCollectionServices.Net
5  **Attorney for Defendant**

6

7                    **UNITED STATES DISTRICT COURT**

8                        **DISTRICT OF NEVADA**

9  PRESCILLA PETRILLO,

10           Plaintiff,                    CASE NO. 3:22-CV-00261-MMD-CLB

11 vs.

12 PINNACLE ERVICES, INC DBA SUMMIT
   COLLECTION SERVICES,
13

14           Defendant

15    **DEFENDANTS ANSWERS TO PLAINTIFF'S FIRST SET OF PRODUCTION OF**
                              **DOCUMENTS**
16

17         To: Plaintiff, PRESCILLA PETRILLO  and her counsel of record, Agruss Law Firm,

18 LLC. Defendant, PINNACLE SERVICES, INC dba SUMMIT COLLECTION SERVICES

19 ("Defendant"), answers the following Requests for Production of Documents.

20                        **REQUESTS FOR PRODUCTION**

21
   1. Produce any and all documents identified in Defendant's Answer, Affirmative Defenses, and
22
   responses to Plaintiff s discovery requests.
23
   **RESPONSE:  See Exhibit #1.**
24
   2. Produce any and all documents referred to, or consulted, in the preparation of Defendant's
25
   Answer, Affirmative Defenses, and responses to Plaintiffs discovery requests.
26
   **RESPONSE:  See Exhibit #1.**
27

28                                    ~ 1 ~

3. Produce any and all documents, account notes, telephone records, telephone notes, and collection notes relating to Defendant's attempts to collect the alleged debt.

**RESPONSE: See Exhibit #1.**

4. Produce any and all letters, bills, debt notices, collection notices, e-mails, faxes, text Messages, and written communications that Defendant sent to Plaintiff and/or that Defendant sent in relation to Plaintiff s alleged debt,

**RESPONSE See Exhibit #1 & Exhibit #2**

5.  Produce any and all documents relating to Plaintiff s account.

**RESPONSE: Exhibit #1 & Exhibit #2**

6. Produce any and all documents relating to Defendant's procedures to provide verification of Plaintiff s alleged debt.

**RESPONSE: See response to Defendants response to Plaintiffs first set of Interrogatories #18.**

7. Produce any and all documents Defendant sent to or received from the original creditor.

**RESPONSE: See response to Request #4**

8. Produce any and all documents Defendant sent to or received from the current creditor.

**RESPONSE: Exhibit #1 & Exhibit #2**

9. Produce any and all documents relating to Defendant's procedures to collect on the debt from Plaintiff.

**RESPONSE: See Exhibit #1**

10. Produce any and all documents reflecting communications between Defendant and any third party relating to Plaintiff s alleged debt.

**RESPONSE: NONE See Exhibit #1**

11. Produce any and all training materials, including videotapes, audiotapes, CDs, and DVDs pertaining to training by or for the Defendant and its employees regarding the\ Fair Debt Collection Practices Act (FDCPA) and the and the Nevada Deceptive Trade Practice Act (NDTPA).

**RESPONSE: See Interrogatory #4 of Defendants answers to Plaintiffs first set of interrogatories.**

~ 2 ~

12. Produce any and all manuals, instructions, guidelines and other documents relating to the policies, procedures, and practices of Defendant in ensuring compliance with the FDCPA and NDTPA.

**RESPONSE: See response to #11.**

13. Produce any and all manuals, instructions, guidelines and other documents setting forth policies and procedures to be used by Defendant's employees with respect to collecting debts.

**RESPONSE: See Interrogatory #4 of Defendants answers to Plaintiffs first set of interrogatories.**

14, Produce any and all documents relating to any system, scheme, technique, practice, procedure or method that Defendant maintains, operates, or employs to record, memorialize, or otherwise document telephone calls made to its customers, past customers, or prospective customers.

**RESPONSE: See Interrogatory #6 of Defendants answers to Plaintiffs first set of interrogatories.**

15, Produce any and all documents relating to any training that Defendant provides to its employees involved in making telephone calls to its customers, past customers, or prospective customers.

**RESPONSE: See Interrogatory #6 of Defendants answers to Plaintiffs first set of interrogatories**

16. Produce any and all recordings, copies, transcriptions, or productions, in any medium, of communications or conversations, or attempted communications or conversations, between Defendant and Plaintiff, and between Defendant and third parties in an attempt to collect the debt from Plaintiff.

**RESPONSE: See Exhibit #1**

17. Produce any and all documents, data, and recordings including, but not limited to, logs, notes, recordings, and computer printouts that reflect all of Defendant's communications and contacts with, and attempts to communicate or contact, Plaintiff.

**RESPONSE: See Exhibit #1**

18. Produce any and all documents relating to, created by, or generated as a result of any system, scheme, technique, practice, procedure or method that Defendant maintains, operates, or employs

to record, memorialize, or otherwise document communications or contacts, or attempted communications or contacts, between Defendant and Plaintiff.

**RESPONSE: See Exhibit #1 and Response #6 of Defendants answers to Plaintiffs first set of Interrogatories.**

19. Produce any and all recordings, copies, transcriptions, or productions, in any medium, of communications or conversations, or attempted communications or conversations, between Defendant and Plaintiff.

**RESPONSE: See Exhibit #1**

20. Produce any and all oral or written statements made by any person (including, but not limited to, employees, agents, supervisors, managers, etc,) regarding the allegations contained in Plaintiff s complaint.

**RESPONSE: See Exhibit #1 and Exhibit #2.**

21. Produce any and all audio recordings including, but not limited to, phone call recordings, digital voice recordings, and computer-based voicemail files related to Plaintiff,

**RESPONSE: NONE**

22. Produce any and al1 recordings, copies, transcriptions, or productions, in any medium, of communications or conversations, or attempted communications or conversations, between Defendant and any third party pertaining to Plaintiff s alleged debt.

**RESPONSE: See Exhibit #1**

23. Produce any and all documents relating to all equipment that Defendant used to make each call to Plaintiffs pagers, cellular telephones, mobile telephones or wireless devices.

**RESPONSE: None, Defendant utilized a telephone system labeled ESI powered by Spectrum.**

24, Produce any and all documents relating to all software, software applications, software packages, software systems, and software programs that Defendant used to make each call to Plaintiff s pagers, cellular telephones, mobile telephones or wireless devices.

**RESPONSE: See response to Request #23**

25. Produce any and all audio recordings including, but not limited to, phone call recordings, digital voice recordings, and computer based voicemail files related to Plaintiff.

**RESPONSE: NONE**

~4~

26. Produce any and all documents supporting any and all of Defendant's Affirmative defenses.

**RESPONSE: See Response #4 of Defendants answers to Plaintiffs first set of Interrogatories.**

27, Produce any and all written agreements between Plaintiff and Defendant.

**RESPONSE: Exhibit #3**

28. Produce any and all written agreements between Defendant and the original creditor and/or current creditor. See Response #27.

**RESPONSE:**

29. Produce any and all documents demonstrating that Plaintiff owes the alleged debt in question, including each itemized part of the debt as reflected in the invoice. (See Exhibit 1)

**RESPONSE: See Exhibit #2**


DATED: this 02nd day of November 2022.


By: /s/ Clifton Young Esq.
Clifton Young, Esq., Attorney for Defendant
Pinnacle Services Inc., dba Summit Collection Services


**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing DEFENDANTS ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES were electronically served to the following parties.

ARGUSS LAW FIRM

mbertucci@agrusslawfitm.com.

DATED: this 03rd day of November 2022.


/s/ Clifton Young, Esq.
Clifton Young, Esq., Attorney for Defendant.

~ 5 ~

EXHIBIT

# 1

# Debtor History Report

## All Companies

### 11/03/2022

Page    1
Date  11/03/2022
Time   12:42 PM

| Debtor ID # | Name | | Ecoa Description | | | Driver's License |
|---|---|---|---|---|---|---|
| 157121 | Prescilla Petrillo | | Maker | | | |
| | David Petrillo | | Maker | | | |

| Social Security Number | Date of Birth | Language | Current Address |
|---|---|---|---|
| XXX-XX-XX89 | 06/04/XXXX | English | 1685 Boulder Ridge Ct. |
| XXX-XX-XX25 | 05/31/XXXX | | Reno, NV 89523 |

| Broken Promise | | Debtor Status | |
|---|---|---|---|
| Worklist | 729 | Closed at Agency Request | Mail Return  F |

| Phone Description | Phone Number |
|---|---|
| x? | 5306134111 |
| E | 9166221869 |

| Account No | Client Name | Client Ref Number | Service Date | List Date | Account Status | Principal | Interest | Fees | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 157121-1 | AESTHETICS MEDICAL | | 04/08/2020 | 06/03/2021 | Closed at Agency | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 | $0.00 | $0.00 |

| Employer | Employment Details | Employer Address | Employer City,State, Zip | Employer Phone |
|---|---|---|---|---|
| PERFECT IMAGE L.L.C | active llc x as mngr | 10580 N. McCarran Blvd | reno | 9166221869 |

### Debtor Activity History   (times displayed as local user time)

| Activity Date | Activity Time | Activity Comments |
|---|---|---|
| 06/03/2021 | 4:16:49 PM | Automatic Debtor status change to NEW. |
| 06/03/2021 | 4:16:49 PM | Debt 157121-1 associated with this debtor. |
| 06/04/2021 | 12:24:17 PM | Letter 1_1 skipped: Address DC is a Mail Return |
| 06/07/2021 | 8:18:17 AM | Bureau Report changed from T to F. |
| 06/07/2021 | 8:20:22 AM | Automatic Debtor status change from NEW to ACT. |
| 06/07/2021 | 8:38:15 AM | Warning: "homemaker" |
| 06/07/2021 | 8:38:49 AM | spouse |
| 06/07/2021 | 8:39:05 AM | (thank god) |
| 06/07/2021 | 8:39:19 AM | 9166221869 and x @ 5306134111 |
| 06/07/2021 | 8:42:14 AM | X ASSOC with many.... many REVOKED corps per SOS |
| 06/07/2021 | 8:42:27 AM | *SEE EMP WINDOW |
| 06/07/2021 | 8:43:39 AM | business addrss OF COURSE a mail box... |
| 06/07/2021 | 8:44:33 AM | this guy does chemical peels and his wife? goes to our |
| 06/07/2021 | 8:44:33 AM | client?? huhh |
| 06/07/2021 | 12:15:21 PM | Letter 1_1 sent to DC. |
| 06/10/2021 | 9:43:19 AM | y @ 1869# got her vmail ids nml |
| 06/14/2021 | 8:58:50 AM | no block 1869# lmom for both |
| 06/16/2021 | 8:48:43 AM | 1869# no block lmom for both.. |
| 06/16/2021 | 8:48:43 AM | *will call him i guess |
| 06/18/2021 | 9:00:39 AM | x no block 4111# kicked no id lmom |
| 06/18/2021 | 9:09:59 AM | call frm x got ntc1 y got my msgs.. took email for |
| 06/18/2021 | 9:09:59 AM | validation x asked that we dont call anymore.. |
| 06/18/2021 | 9:09:59 AM | told him would note account RECVD NTC1 and that docs |
| 06/18/2021 | 9:09:59 AM | sent by email as VALIDATION will leave it up to them |
| 06/18/2021 | 9:09:59 AM | to reslove issue past this point |
| 06/18/2021 | 9:12:16 AM | drpetril@gmail.com *sent |
| 06/18/2021 | 12:38:48 PM | Automatic Debtor status change from ACT to DIS. |
| 06/18/2021 | 12:41:38 PM | got reply email from x? "This is not the original |

**Debtor History Report**

Debtor ID #   157121          Name Prescilla Petrillo          David Petrillo

Debtor Activity History    (times displayed as local user time)

| Activity Date | Activity Time | Activity Comments |
|---|---|---|
| 06/18/2021 | 12:41:38 PM | invoice as this has collection fee's added to it, and |
| 06/18/2021 | 12:41:38 PM | bogus account and balance fee's owned that have no |
| 06/18/2021 | 12:41:38 PM | explanation. Which suggest she owe's  624.80 in |
| 06/18/2021 | 12:41:38 PM | consultation fee's? That is most certainly false. |
| 06/18/2021 | 12:41:38 PM | Please send over correct service agreement, not a |
| 06/18/2021 | 12:41:38 PM | false one." |
| 06/18/2021 | 12:41:38 PM | ??? forwardd to client for reposnse |
| 06/21/2021 | 8:43:14 AM | got email fropm client... |
| 06/21/2021 | 8:43:21 AM | The customer signed an agreement stating if she owes a |
| 06/21/2021 | 8:43:21 AM | balance and does not pay, the balance plus collection |
| 06/21/2021 | 8:43:21 AM | fees will be sent to collections the balance is valid |
| 06/21/2021 | 8:43:21 AM | and stands. |
| 06/21/2021 | 8:43:21 AM | Warmly, |
| 06/21/2021 | 8:43:21 AM | Jasmine |
| 06/21/2021 | 8:44:13 AM | *replied to respond on letterhead and with a detailed |
| 06/21/2021 | 8:44:13 AM | statement of balance due prior to "additional fees" |
| 06/23/2021 | 12:24:50 PM | got client repose will mail out via certiff this |
| 06/23/2021 | 12:24:50 PM | friday |
| 06/25/2021 | 11:39:21 AM | ready to go |
| 06/29/2021 | 11:06:47 AM | *was sent |
| 06/30/2021 | 12:20:13 PM | got email from x |
| 06/30/2021 | 12:29:48 PM | *see scanfile  everything is in there |
| 06/30/2021 | 3:00:06 PM | client emails me... |
| 06/30/2021 | 3:00:20 PM | Matt, |
| 06/30/2021 | 3:00:20 PM | We have already sent everything this back and forth |
| 06/30/2021 | 3:00:20 PM | needs to stop, you guys do this to us all the time and |
| 06/30/2021 | 3:00:20 PM | we have sent you everything twice, nothing changes. |
| 06/30/2021 | 3:00:20 PM | the balance stands, they have continued to state we |
| 06/30/2021 | 3:00:20 PM | frauded them this clearly shows they owe us. |
| 07/07/2021 | 11:33:24 AM | skyped bc no timer all docs in scan file all info in |
| 07/07/2021 | 11:33:24 AM | emp window |
| 08/26/2021 | 4:46:11 PM | got email from client "whats the status" |
| 08/26/2021 | 4:46:11 PM | *replied disputed and legal dept will determine if and |
| 08/26/2021 | 4:46:11 PM | when to pursue civil suit based on a number of |
| 08/26/2021 | 4:46:11 PM | vairables. |
| 09/01/2021 | 11:35:34 AM | client called - BC adv she wiuld have to idemtify |
| 09/01/2021 | 11:35:34 AM | Summit against the legal fees if we lost- Jasmine sz |
| 09/01/2021 | 11:35:34 AM | go ahead ance cancel- she will have her attorney |
| 09/01/2021 | 11:35:34 AM | proceed- |
| 09/01/2021 | 11:35:56 AM | Automatic Debtor status change from DIS to HLD. |
| 09/01/2021 | 11:36:10 AM | Int Calc Date changed from 04/28/2021 to 09/01/2021. |
| 09/01/2021 | 11:36:11 AM | Automatic Debtor status change from HLD to CAR. |
| 09/01/2021 | 11:36:12 AM | Balance adjusted to 0.00 |
| 05/23/2022 | 1:13:53 PM | Re: Petrillo, Prescilla v. Summit Collection Services |
| 05/23/2022 | 1:13:53 PM | [Pre-Suit] |
| 05/23/2022 | 1:13:53 PM | Sent |

11/03/2022 12:42:15 PM                    **Debtor History Report**                                        Page: 3

Debtor ID #   157121              <u>Name</u>  Prescilla Petrillo              David Petrillo


<u>Debtor Activity History</u>     (times displayed as local user time)

| Activity Date | Activity Time | Activity Comments |
|---|---|---|
| 05/23/2022 | 1:13:53 PM | Brian Chew <brian@summitcollectionservices.net> |
| 05/23/2022 | 1:13:53 PM | To:Mike Bertucci |
| 05/23/2022 | 1:13:53 PM | Mon, May 23 at 1:13 PM |
| 05/23/2022 | 1:13:53 PM | Good Afternoon Mike- |
| 05/23/2022 | 1:13:53 PM | Thank you following up on your pre-suit demand of |
| 05/23/2022 | 1:13:53 PM | April 12, 2022. I appreciate your position but I do |
| 05/23/2022 | 1:13:53 PM | not share your belief that Summit violated David & |
| 05/23/2022 | 1:13:53 PM | Prescilla Pertrillo rights and they were damaged in |
| 05/23/2022 | 1:13:53 PM | any way by our actions. With that said, I will offer |
| 05/23/2022 | 1:13:53 PM | $500.00, and send the collection assignment back to my |
| 05/23/2022 | 1:13:53 PM | client with a deletion of the trade-line from Summit. |
| 05/23/2022 | 1:13:53 PM | The reality is, your firm previously filed suit |
| 05/23/2022 | 1:13:53 PM | against Summit for the same allegation which was |
| 05/23/2022 | 1:13:53 PM | eventually dismissed and no doubt you will again in |
| 05/23/2022 | 1:13:53 PM | the future. It might be best for both firms to |
| 05/23/2022 | 1:13:53 PM | litigate this this case and see where the cards fall. |
| 05/23/2022 | 1:13:53 PM | If you decide to go forward, please let me know if |
| 05/23/2022 | 1:13:53 PM | your are authorized to accept service of process on |
| 05/23/2022 | 1:13:53 PM | behalf of David & Prescilla Pertrillo for the |
| 05/23/2022 | 1:13:53 PM | underlying debt. |
| 05/23/2022 | 1:13:53 PM | Again, thank you for reaching out. |
| 05/23/2022 | 1:13:53 PM | Brian |
| 06/22/2022 | 1:14:07 PM | draft Answer to Federal Complaint |
| 07/07/2022 | 9:59:06 AM | REVISE ANSWER TO COMPLAINT |
| 07/07/2022 | 9:59:06 AM | BRIAN TO REVIEW |
| 08/24/2022 | 3:29:35 PM | The owner of Aesthetic Medical Training (AMT) |
| 08/24/2022 | 3:29:35 PM | assigned an account on June 3, 2021 to Summit |
| 08/24/2022 | 3:29:35 PM | Collection Services for $1,162.00. The collection fee |
| 08/24/2022 | 3:29:35 PM | that Plaintiff references is documented in the |
| 08/24/2022 | 3:29:35 PM | FINANCIAL AGREEMENT section of the contract that |
| 08/24/2022 | 3:29:35 PM | Plaintiff signed on 08/07/20. The correspondence with |
| 08/24/2022 | 3:29:35 PM | Plaintiff were limited to the initial notice of |
| 08/24/2022 | 3:29:35 PM | assignment, verification of debt and the written |
| 08/24/2022 | 3:29:35 PM | response from AMT to Plaintiffs dispute. |
| 08/24/2022 | 3:29:35 PM | A notice of assignment was sent to |
| 08/24/2022 | 3:29:35 PM | Plaintiff on June 3, 2021. There is no way that Summit |
| 08/24/2022 | 3:29:35 PM | could know whether the amount AMT billed was falsified |
| 08/24/2022 | 3:29:35 PM | in any way or changed from their original contract. On |
| 08/24/2022 | 3:29:35 PM | June 18, 2021, Plaintiff disputed the debt via |
| 08/24/2022 | 3:29:35 PM | telephone conversation at approximately 9:09am, a |
| 08/24/2022 | 3:29:35 PM | verification/validation  of the debt was sent to |
| 08/24/2022 | 3:29:35 PM | Plaintiff by email at approximately 9:12am. At 12:41pm |
| 08/24/2022 | 3:29:35 PM | Defendants received a written dispute via e-mail from |
| 08/24/2022 | 3:29:35 PM | Plaintiff claiming the validation of debt that |
| 08/24/2022 | 3:29:35 PM | Defendant sent her was different than the one she |
| 08/24/2022 | 3:29:35 PM | received from AMT.  Plaintiffs e-mail was sent to AMT |

11/03/2022 12:42:15 PM                    **Debtor History Report**                                                    Page: 4

Debtor ID #   157121                    Name  Prescilla Petrillo                    David Petrillo

Debtor Activity History      (times displayed as local user time)

| Activity Date | Activity Time | Activity Comments |
|---|---|---|
| 08/24/2022 | 3:29:35 PM | for response.   On June 23, 2021, the owner of AMT |
| 08/24/2022 | 3:29:35 PM | responded to Plaintiff's written dispute of the bill, |
| 08/24/2022 | 3:29:35 PM | and Summit forwarded AMT's response to Plaintiff's by |
| 08/24/2022 | 3:29:35 PM | certificate of mailing mail on June 25, 2021. Nothing |
| 08/24/2022 | 3:29:35 PM | further happened on this case. Summit changed the |
| 08/24/2022 | 3:29:35 PM | status of the claim to disputed and didn't pursue |
| 08/24/2022 | 3:29:35 PM | collections against Ms. Petrillo by phone calls or by |
| 08/24/2022 | 3:29:35 PM | letters.  Summit reviewed the material that AMT |
| 08/24/2022 | 3:29:35 PM | provided, the financial agreement does provide for |
| 08/24/2022 | 3:29:35 PM | fees if the account is assigned to a collection agency |
| 08/24/2022 | 3:29:35 PM | in the event the account is not paid in full. |
| 08/24/2022 | 3:29:35 PM |  Nothing further was done on the account until Ms. |
| 08/24/2022 | 3:29:35 PM | Petrillo filed the instant action against Summit |
| 08/24/2022 | 3:29:35 PM | Collections. |
| 09/20/2022 | 11:45:52 AM | chart in main filing cabinet |
| 09/20/2022 | 11:50:46 AM | ** |
| 09/20/2022 | 11:50:46 AM | File in HB |
| 09/20/2022 | 11:50:46 AM | ** |

EXHIBIT

# 2



ceived refund check in the amount of $244.40. client refund should have only been $19.00 client was over paid by $225.80.

June 22nd 2021

RE; Prescilla Petrillo

The above customer purchased 50 units of Botox, she paid $499.00 and received a $101.00 discount. (Regular price $600.00.) she used 40 units total would be $480, she paid $499 so credit would be $19.00. to settle her account (please read her signed refund / settlement policy). she was sent a payment via check in the amount of $244.40 minus the $19.00, she would owe the company $225.80.

The customer has made false accusations stating that the company has frauded her, when in reality she owes the company $225.80, due to the back and forth and trying to explain to this customer who refuses to listen, she has occurred account fees, further refused to settle in a professional manner and has now ended up in collections, therefore added collection fees to her balance. I do apologize the invoice sent was unclear, please find updated invoice should clearly explain her purchase / total owed.

Sincerely,

Jessica Miles
Account Representative

Aesthetics Medspa.  6295 Sharlands Ave, Ste C-1. Reno NV 89523.  775 825 1586. All Rights Reserved 2021

Aesthetics Medical Training LLC      **Invoice  5325**
6295 Sharlands Ave
Reno, NV  89523 US
+1 7758251586
amtnv@att.net



| BILL TO | | | |
|---|---|---|---|
| Prescilla Petrillo | DATE<br>08/07/2020 | PLEASE PAY<br>$1,249.60 | DUE DATE<br>08/07/2020 |

| DATE | ACTIVITY | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | Botox  Aesthetic | Botox purchased | 50 | 12.00 | 600.00 |
| | Client payment received | Payment received from Client | 1 | -499.00 | -499.00 |
| | Discount | Discount client received | 1 | -101.00 | -101.00 |
| | Botox  Aesthetic | Botox client used<br>40 units x $12 per unit (regular price) =$480<br>client paid $499 - to settle account<br>client had a credit of $19.00 | 40 | -0.475 | -19.00 |
| | Account fees | Accounting fees<br>Please find signed policy - refunds | 1 | 399.00 | 399.00 |
| | Collection fees | Collection fees<br>Please find signed policy - financial agreement. | 1 | 624.80 | 624.80 |
| | Client payment received | Client received a payment | 1 | 244.80 | 244.80 |

Will be charged full price for service minus any discounts to settle account

TOTAL DUE        **$1,249.60**

THANK YOU.

## Cancellation Policy

We value your time; therefore, your appointment time is set aside especially for you. We, require 24 hours' notice for cancellation or to reschedule of an appointment, in order not to be charged for full service.
If you are late you will be charged for the full service and your service will end at the appointed time, so we can be on time for the next client.
No show you will be required to pay for the missed appointment before you can reschedule.

## Gift Certificates

You may purchase your gift cards at our spa or you may call us with your payment and we can mail the gift card. There are no refunds on gift certificates.

## Refunds

 All sales are final; any credit on an account can be used towards services offered at Aesthetics Med Spa. Account settlement will be based off the regular price (See brochure) minus any fees applied.

## Consultations

All first time patients that request a consultation, for a professional recommendation as to what treatment is best for you will have a fee of $45.00

## Care Credit

Will be accepted for all regular priced service, promotions will be 6 months no interest in purchases under $1000 and 24 months fixed pay / reduced APR for purchases over $1000.

## Return Payment: $50 fee on all returned payments

## Financial Agreement

I agree that I am responsible for the balance on my account and authorize Aesthetics Med spa to charge my credit card on file for my outstanding balance.

I understand that if I do not pay my account balance in full that my account may be assigned to a collection agency for collection.

I understand that if my account is signed to a collection agency, the collection agency will charge a fee that may be as much as 50% to the balance I owe and I agree to pay the additional amount.

I understand and agree that in the event legal action is commenced to enforce my obligations hereunder, that I will pay court costs and attorney fees.

Patient Signature: _____   Date: _08/07/20_

Aesthetics Medical Training

All Rights Reserved 2020

## CLIENT INFORMATION & MEDICAL HISTORY

In order to provide you with the most appropriate laser treatment, we need you to complete the following questionnaire. All information is strictly confidential.

**PERSONAL HISTORY**

Client Name _Prescilla Petrillo_ Today's Date _08/07/20_

Date of Birth _06/04/87_ Age _33_ Occupation _Homemaker_ S/S _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_

Home Address _1485 Boulder Ridge Ct._ City _Reno_ State _NV_ Zip Code _89523_

Home Phone (_916_) _622 1869_ Work Phone (___) _____

Email Address _prescilla petrillo @ gmail. com_

Emergency Contact Name _David Petrillo_ Phone _(530) 613-4111_ Relationship _Husband_

Aesthetics Medical Training

7012

04/14/2021       **Prescilla Petrillo**

244.80

**Cash - USBnk Checking #2735**                                      244.80

Prescilla,

Your appointment with Aesthetics Medspa & Training on Friday, August 7 at 10:30 AM is now booked. We'll see you then!

**Social distancing** is a must for the health and safety of you and our staff.

We ask all patients to view the COVID-19 symptoms, if you display any of the symptoms please reschedule your appointment.

Patients will  be pre screened before treatment.

Patients will be seen by an appointment only.

Patient is to wait in the patient's car – until the patient's appointment, we will call you to come in.

Please come prepared ready for treatment - (Make - up free)

We communicate via email (Hipaa Privacy) please make sure you check your emails daily for any updates from us.

If you need to contact us please call 775 825 1586. You may also contact us by replying to this email, or support@aestheticsreno.com.

**Consultation Fee**

There will be a $45 charge for all consultations.

**Cancellation Policy**

We value your time, therefore, your appointment time is set aside especially for you. We, require 24 hours notice for cancellation or to reschedule of an appointment. In order not to be charged for full service. If you are late you will be charged for the full service and your service will end at the appointed time, so we can be on time for the next client. No show will be required to pay a $50.00 fee for the missed appointment before you can reschedule.

**Refunds**
All sales are final, any credit on an account can be used towards services offered at Aesthetics Med Spa.
**Numbing Service**

If you require to be numb for your treatment we can provide the service, we will charge $10 per area to be numbed.

**Brilliant Distinctions**

BD points not activated at the time of your visit will **Not be applied to your balance**, due to privacy laws, we do not have access to your account, please contact brilliant distinctions.

**Care Credit**

We accept carecredit for all treatments over $1000.00

**Referral Program**
Refer a friend and receive $20 off your next service.

Thank you,

Aesthetics Team

Aesthetics MedSpa

6295 Sharlands Ave, Suite 1

Reno, NV 89523

775 825 1586

80 Continental dr ste 101
Reno, Nevada 89509

ADDRESS CORRECTION REQUESTED
PLEASE FORWARD

**CONFIDENTIAL TO BE OPENED BY ADDRESSEE ONLY**
**Prescilla & David Petrillo**                          **D  157121**
1685 Boulder Ridge ct
Reno, NV 89523



**pinnacle services inc. dba**
**SUMMIT COLLECTION SERVICES**
80 Continental Drive suite 101
Reno, Nevada 89509
**VOICE** (775) 323-1898        **FACSIMILE** (775) 323-1598

DATE: 6-25-21

RE:  Aesthetics Medical Training                          total due: **$ 1171.36**

As per your communication, enclosed please find <u>WRITTEN VERIFICATION</u> from our client and documentation to substantiate the claim against you.

**This is an attempt to collect a debt.  Any information**
**obtained will be used for that purpose.**

Regards,
Summit Collection Services

**...Services**
**...ntal Drive, Suite 101**
**...NV 89509**

Check type of mail or service:

- ☐ Certified
- ☐ COD
- ☐ Delivery Confirmation
- ☐ Express Mail
- ☐ Insured

- ☐ Recorded Delivery (International)
- ☐ Registered
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation

Affix Stamp Here
(if issued as a
certificate of mailing,
or for additional
copies of this bill)
Postmark and
Date of Receipt

| | Article Number | Addressee (Name, Street, City, State, & ZIP Code) | Postage | Fee | Handling Charge | Actual Value if Registered | Insured Value | Due Sender if COD | SH Fee | RD Fee |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 7016 2140 0000 6983 7112 | Nicholas Destrem 1690 ... on 158038 | | | | | | | | |
| 2. | 7016 2140 0000 6983 7129 | Emm ... 899 ... R.V 9114 #9 ... 15813 | | | | | | | | |
| 3. | 7016 2140 0000 6983 7174 | Osca ... 655 ... Ren ... 15813 | | | | | | | | |
| 4. | 7016 2140 0000 6983 7167 | Saac ... 349E E143 | | | | | | | | |
| 5. | 7016 2140 0000 6983 7150 | Heather Denise Gonzales 265 Elquist Drive 158111 ... Reno, NV, 89433 | | | | | | | | |
| 6. | 7016 2140 0000 6983 7143 | Sparks, NV, 89433 ... Kat ... 10 158115 | | | | | | | | |
| 7. | 7016 2140 0000 6983 7136 | P.O. ... 19105 ... Chr ... den 158112 ... 75 ... ky | | | | | | | | |
| 8. | | Sparks, NV. 89431 | | | | | | | | |

Total Number of Pieces Listed by Sender

Total Number of Pieces Received at Post Office

Postmaster, By (Name of receiving employee)

PS Form **3877**, February 2002 (Page 1 of 2)     Complete by Typewriter, Ink, or Ball Point Pen     See Privacy Act Statement on Reverse

GALENA STATION
MAR 25 2022
RENO, NV 89502-9998

GALENA STATION
MAR 25 2022
RENO, NV 89502-9998

GALENA STATION
MAR 25 2022
RENO, NV 89502-9998

To:     mbennett@summitcollectionservices.net

Date:  Friday, June 18, 2021, 12:34 PM PDT

This is not the original invoice as this has collection fee's added to it, and bogus account and balance fee's owned that have no explanation. Which suggest she owe's  624.80 in consultation fee's? That is most certainly false. Please send over correct service agreement, not a false one.

On Fri, Jun 18, 2021 at 9:12 AM matt bennett <mbennett@summitcollectionservices.net> wrote:

validation as requested.

*this is an attempt to collect a debt and any information obtained will be used for that purpose*

**Matt Bennett**
**Summit Collection Srvc.**
**775) 323-1588**
**80 Continental dr ste 101**
**Reno, NV 89509**

-- CONFIDENTIALITY -- This email (including attachments) is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the intended recipient, please do not read, copy, or re-transmit this communication. If you are the intended recipient, this communication may only be copied or transmitted with the consent of the sender. If you have received this email in error, please contact the sender immediately by return email and delete the original message and any attachments from your system. Thank you in advance for your cooperation and assistance.

David Petrillo

From:  David Petrillo (dpetrino@gmail.com)

To:  mbennett@summitcollectionservices.net

Date:  Wednesday, June 30, 2021, 12:06 PM PDT

Matt,

The Financial agreement part was doctored from them, that is why they are sending you a scanned copy. My wife never signed that. As you can see (see attached) when they sent their terms, there was no mention of financial agreement, and they took out the social distancing  policy and added to the refund policy. Additionally the refund check was because she knew they owed my wife $144 refund (see attached) and she added an additional $100 in there that we did not ask for, hoping a review would be removed. So we don't actually owe her that money at all. This is part of an ongoing legal battle, and if I were you I would not get involved. At this point, your company will also be hearing from our attorneys soon for unfair collection practices. Feel free to report to the credit bureaus, you will be reporting false claims, which is illegal. My attorney is already aware that you may be doing this.

On Fri, Jun 18, 2021 at 9:12 AM matt bennett <mbennett@summitcollectionservices.net> wrote:

validation as requested.

*this is an attempt to collect a debt and any information obtained will be used for that purpose*

**Matt Bennett**
**Summit Collection Srvc.**
**775) 323-1588**
**80 Continental dr ste 101**
**Reno, NV 89509**

-- CONFIDENTIALITY -- This email (including attachments) is intended solely for the use of the individual to whom it is addressed and may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law.  If you are not the intended recipient, please do not read, copy, or re-transmit this communication. If you are the intended recipient, this communication may only be copied or transmitted with the consent of the sender.  If you have received this email in error, please contact the sender immediately by return email and delete the original message and any attachments from your system.  Thank you in advance for your cooperation and assistance.

David Petrillo

Screen Shot 2021-06-30 at 11.53.41 AM.png
213.4KB

Screen Shot 2021-06-30 at 11.56.23 AM.png
230.4KB

EXHIBIT

# 3



# AGREEMENT

3677

THIS AGREEMENT, made on November 29, 2017, between **SUMMIT COLLECTION**

**SERVICES,** hereafter referred to as **"Agency"** located at 491 Court Street Reno, Nevada 89501,

TELEPHONE (775) -323-1898 FACSIMILE (775) 323-1598 and Aesthetics Medical Training **; located** at:

6295 Sharlands Avenue Suite 1  Reno, NV 89523, herein referred to as **"Client"**.

Telephone 775 825-7586    Facsimile / email= amtnv@att.net

## **WITNESSETH:**

WHEREAS, Client desires to assign a certain account, or accounts, to Agency; and

WHEREAS, AGENCY desires to collect a certain account, or accounts, the Property of Client,

**NOW**, THEREFORE, it is mutually agreed as follows:

1.        In consideration of 60% **(paid to Client)** of all monies collected, Client hereby assigns and transfers to Agency, all right, title and intent of, or, in any and all monies now due or which may become due, or correspondence, as indicated on the debtor assignment sheets and made part of this agreement.

2.        The total consideration payable to Agency by client pursuant to paragraph 3 of this Agreement is the sum of 40% **(retained by Agency)** of all monies collected. Client agrees to increase Agency's commission to* 50% on all monies collected should legal action be initiated by agency on said account. Client understands Agency's commission will increase 10% on all second placement accounts. Second placement accounts are defined as any account that has been assigned to any other third party prior to being resigned to Agency.

3.        The total consideration referred to in paragraph 1 of this Agreement is payable and due by Agency to Client within thirty (30) days from the day of the month in which collected.

4.        Client hereby gives agency, its administrators, executors, successors and assigns, the full power and authority, for the use and benefit of Agency, without cost accountancy for the accounts, or any part thereof, and in the name of the Client or otherwise to prosecute any suit therefore. Client also authorizes Agency to impose and collect all interest and/or penalties allowed by law from the date the principle amount became due.  Client represents to Agency that every account assigned for collection is a closed account or that the account is closed upon assignment by Client to Agency with respect to that account, but not necessarily any other monies that may be due client.



Aesthetics Medical Training
November 29, 2017
Page Two

5.      Client agrees that if client receives any payment on any account included that Client will immediately notify Agency of such checks, drafts or money intended as payment.

6.      Agency will retain all interest and/or costs accrued and incurred from the date the principle amount became due and throughout the collection process. Monies received for payments and partial satisfaction will first be credited against the total legal costs, late fees, returned check fees and attorneys fees incurred with any excess credited against the net balance. No interest will be retained by agency until the entire principle balance is paid to client.

7.      Client agrees to cease any further correspondence or negotiations with debtor.

8.      Client agrees to give at least 30 day written notice for all accounts recalled from **SUMMIT COLLECTION SERVICES.**  Client also understands no account in the process of immediate collection can be recalled.

9.      This agreement shall be construed, interpreted and governed by the laws of the State of Nevada.

10.     The foregoing constitutes the entire agreement between the parties and the provisions hereof shall be binding upon the parties, their executors, administrators, successors and assigns.


**Aesthetics Medical Training**                    **SUMMIT COLLECTION SERVICES**


_____                        _____
**SIGNATURE**                                       Brian Chew

# EXHIBIT B

| | |
|---|---|
| **From:** | Mike Bertucci |
| **To:** | Cliff Young |
| **Subject:** | Re: Attorney Fees FDCPA (Petrillo v. Summit Collection Services) |
| **Date:** | Wednesday, November 23, 2022 5:59:43 PM |
| **Attachments:** | image001.png |
| | Outlook-ie0cyvuz.png |

Hi Cliff,

Do you have evidence that someone from Summit spoke to the Petrillos before leaving the June 14th voicemail? If so, then you may be correct. But my understanding was that the June 14th voicemail was the very first communication with the Petrillos. Your client's discovery answers are not clear on this point.

As for the offer of judgment, your offer included attorney's fees and costs. If my clients are awarded $1 for the FDCPA violation, then they will beat the offer of judgment because they will also be awarded $737 in costs and $5,745 in attorneys fees as of now.

If your client wants to pursue a Title 3 argument, then we will simply re-file in state court.

If you can clarify when the first conversations took place, then perhaps we can resolve this without further litigation.

Happy Thanksgiving to you as well.

Best,

Mike

**Mike Bertucci | Attorney**
4809 N Ravenswood Ave, Suite 419, Chicago, IL 60640
Tel: 312-755-6606 | Cell: 312-218-1130 | Fax: 312-253-4451



**From:** Cliff Young <cliffyounglaw@yahoo.com>
**Sent:** Wednesday, November 23, 2022 5:35 PM
**To:** Mike Bertucci <mbertucci@agrusslawfirm.com>
**Subject:** Re: Attorney Fees FDCPA (Petrillo v. Summit Collection Services)

Dear Mike,

# EXHIBIT C



December 28, 2022

<u>*Via Email*</u>

Clifton Young, Esq.
Cliffyounglaw@yahoo.com

**Re:   Plaintiff's Rule 37 Letter in Petrillo v. Pinnacle Services, 3:22-cv-00261-MMD-CLB**

Dear Mr. Young,

On October 4, 2022, Plaintiff served upon Defendant the following:

1. Plaintiff's Interrogatories, Set One, and
2. Plaintiff's Requests for Production, Set One,

Defendant's responses were due on November 3, 2022. On November 2, 2022, Defendant served its responses to discovery. However, Defendant failed to substantively respond to most of the Interrogatories and Requests for Production. Notably, rather than answering the interrogatories, many of Defendant's responses to merely  reference the Debtor History Report (Exhibit 1) which does not contain responsive answers. Moreover, Defendant refused to produce its Initial Disclosures.

Soon after Defendant served its responses to discovery, we discussed this case via telephone. During that call, I mentioned that Defendant's June 14, 2021 voicemail to Plaintiff was the first telephonic communication with Plaintiff, and violated the FDCPA. I also mentioned that the voicemail was identical to the voicemail in *Forkum v. Co–Operative Adjustment Bureau, Inc.*, 44 F.Supp.3d 959 (2014), wherein the Court granted the plaintiff's motion for summary judgment. Notably, Defendant's discovery responses evade straightforward interrogatories requesting the dates and content of communications with Plaintiff. During our call, you were unsure of the date of the voicemail and agreed to look into the timing of the same and provide such information to me. Since then, we have exchanged dozens of emails and engaged in additional telephonic conferences.

In an effort to avoid motion practice and resolve this matter amicably, I sent you an email on November 23, 2022 asking if any of Defendant's employees spoke to Plaintiff prior to June 14, 2021. You did not respond. I emailed you again on December 2, 2022, asking if the June 14, 2021 email was Defendant's first communication with my client. You did not respond. We subsequently

1

held another telephonic conference wherein I explained that Defendant's discovery Exhibit 1 did not clearly identify the date of the voicemail, or prior or subsequent communications. You agreed to review Exhibit 1 with your client and get back to me. You never provide the requested information.

Unfortunately, your refusal to confirm the dates of Defendant's communications with Plaintiff are not the only issue. The improper discovery responses are itemized below.

**<u>Defendant's Answers to Interrogatories</u>**

Interrogatory #4 States: Describe the Fair Debt Collection Practices Act ("FDCPA") and the Nevada Deceptive Trade Practice Act ("NDTPA") training, including the title or other identifying information of manuals, memorandum, or other documents used, provided to each employee who was communications with involved in the attempt to collect from Plaintiff and/or any Plaintiff.

Defendant answered as follows: "… NRS 649 and the month publications of The Writ, The Nevada Lawyer and the American Collector Association of published judicial decisions involving the collection industry."

> **Defendant's answer does not describe any training. Moreover, Plaintiff's Request for Production #1 requests "any and all documents identified in Defendant's Answer, Affirmative Defenses, and responses to Plaintiffs discovery requests." The documents listed in answer to Interrogatory #4 were not produced. Please produce the same and answer Interrogatory #4.**

Interrogatory #6 States: Did Defendant electronically record, tape, or preserve text messages sent between Defendant and Plaintiff, or third parties, telephone calls between Defendant and Plaintiff, or third parties, or voicemail messages Defendant left for Plaintiff or third parties regarding the alleged debt?
> a. If so, how many calls were recorded and who is in possession of the recordings.
> b. If so, how many text messages were preserved and who is in possession of the messages.

Defendant answered as follows: All communications are documented in Debt master. See Exhibit #1 of Defendants first set of Production of Documents.

> **The calls and text messages are not listed in Exhibit #1. Moreover, the recordings and text messages were not produced. Please produce the same and answer Interrogatory #6.**

Interrogatory #7 States: List and explain all abbreviations, codes, letters, numerals, or symbols used by Defendant in its records and/or collection notes.

**Defendant's answer does not explain numerous abbreviations or codes listed in Exhibit #1, including but not limited to "lmom." Please fully answer Interrogatory #7.**

Interrogatory #8 States: Identify all persons other than Plaintiff with whom you communicated about Plaintiff's alleged debt after you began collection efforts regarding the alleged debt you sought to collect on.

Defendant answered as follows: All collection activity is documented in Exhibit #1 of Defendants first set of Production of Documents.

**Exhibit #1 does not answer the Interrogatory. Please answer Interrogatory #8.**

Interrogatory #9 States: State all addresses and telephone numbers that Defendant used to contact Plaintiff and third parties and whether the communication was oral or written.

Defendant answered as follows: See Exhibit #1 of Defendants first set of Production of Documents.

**Exhibit #1 does not answer the Interrogatory, including addresses and telephone numbers. Please answer Interrogatory #9.**

Interrogatory #12 States: Identify and describe each document and record known to Defendant which is related to Plaintiff's alleged debt.

Defendant answered as follows: See Exhibit #1 of Defendants first set of Production of Documents.

**Exhibit #1 is not clear and does not answer the Interrogatory. Moreover, Plaintiff received at least 1 letter from Defendant which Defendant did not list or produce Please answer Interrogatory #12.**

Interrogatory #14 States: State in detail the facts upon which you rely for each affirmative defense listed in your Answer.

Defendant answered as follows: DEFENDANTS RELY ON THE FAIR DEBT AND COLLECTION PRACTICES ACT, NEVADA REVISED STATUTES, THE COPIOUS AMOUNTS OF CASE LAW AND DECISIONS F'ROM STATE, CIRCUIT AND SURPREME COURTS.

**This response does not answer the Interrogatory and does not state any facts as requested by the interrogatory. Please answer Interrogatory #14.**

Interrogatory #15 States: Identify and describe each communication, or attempted communication, between Defendant and Plaintiff, or any third person, which was made in connection with the collection of the alleged debt Defendant is contacting Plaintiff about, by stating the following:

a. The name and alias of the individual initiating the communication;
b. The name of the person and/or description of the person to whom the communication was directed;
c. The date and time of the communication;
d. The method of the communication (e.g. letter, phone call, e-mail, text message, in-person, etc.);
e. A detailed description of the substance of the communication, (do not simply refer to collection notes);
f. Identification of all witnesses to or participants in the communication; and
g. Any actions taken by any Defendant as a result of the communication.

Defendant answered as follows:
(b)-(e): See Exhibit #1 of Defendants first set of Production of Documents
(f): The only witnesses know are the individuals described on the specific dates and times as Documented in Exhibit #L of Defendants first set of Production of I Documents
(g): See Exhibit #1 of Defendants first set of Production of Documents

**Exhibit #1 does not answer any part of the Interrogatory. Please answer Interrogatory #15.**

Interrogatory #17 States: State whether Defendant has ever caused a lawsuit to be filed in an attempt to collect a debt, including against Plaintiff.

Defendant answered as follows: Yes, Defendant has filed 100's of lawsuits.

**Defendant's response does not answer whether a lawsuit was filed against Plaintiff to collect the debt. Please fully answer Interrogatory #17.**

Interrogatory #19 States: Describe the specific basis for (1) attempting to collect from Plaintiff, and (2) verifying, an "account fee" as listed in the verification invoice sent from Defendant to Plaintiff (See Exhibit 1).

Defendant answered as follows: See Exhibit #1 of Defendants first set of Production of Documents

**Exhibit #1 does not answer any part of the Interrogatory. Please answer Interrogatory #19.**

4

FRCP 33 requires that "each interrogatory shall be answered separately and fully." A party has a duty to cooperate with discovery and violates that duty by providing evasive and incomplete answers. *Airtex Corp. v. Shelly Radiant Ceiling Co*., 536 F.2d 145, 155 (7th Cir. 1976). It is well established that "interrogatory answers must be complete in and of themselves; other documents or pleadings may not be incorporated into an answer by reference." *Mahoney v. Kempton*, 142 F.R.D. 32, 33 (D.Mass., 1992); *See* Fed. R. Civ. P. 33(b). "Answers to interrogatories should be in such form that they may be used upon a trial, as Rule 33 contemplates." *J.J. Delaney Carpet Co. v. Forrest Mills, Inc.*, 34 F.R.D. 152, 153 (S.D.N.Y. 1963).

Defendant's responses to Plaintiff's Interrogatories are completely improper. Defendant should supplement its responses and substantively respond to the aforementioned Interrogatories by January 6, 2023.

**Defendant's Answers to Requests for Production**

Request for Production #1 States: Produce any and all documents identified in Defendant's Answer, Affirmative Defenses, and responses to Plaintiff's discovery requests.

Defendant answered as follows: See Exhibit #1.

> **As noted above, the documents listed in Defendant's response to Interrogatory #4 were not produced. Moreover, the call recordings between Defendant and Plaintiff, and at least 1 letter, were not produced. Please produce the same.**

Request for Production #2 States: Produce any and all documents referred to, or consulted, in the preparation of Defendant's Answer, Affirmative Defenses, and responses to Plaintiff's discovery requests.

Defendant answered as follows: See Exhibit #1.

> **Defendant did not produce the call recordings or other documents reviewed. Please produce the same.**

Request for Production #9 States: Produce any and all documents relating to Defendant's procedures to collect on the debt from Plaintiff.

Defendant answered as follows: See Exhibit #1.

> **Exhibit #1 is the "Debt History Report," and is unrelated to Defendant's procedures. Please produce Defendant's procedures.**

Request for Production #11 States: Produce any and all training materials, including videotapes, audiotapes, CDs, and DVDs pertaining to training by or for the Defendant and its employees regarding the Fair Debt Collection Practices Act (FDCPA) and the and the Nevada Deceptive Trade Practice Act (NDTPA).

Defendant answered as follows: See Interrogatory #4 of Defendants answers to Plaintiffs first set of interrogatories.

**The reference to an interrogatory is an improper response to a request for production. Moreover, the documents referenced in Defendant's answer to Interrogatory #4 were not produced. Please produce the responsive documents.**

Request for Production #12 States: Produce any and all manuals, instructions, guidelines and other documents relating to the policies, procedures, and practices of Defendant in ensuring compliance with the FDCPA and NDTPA.

Defendant answered as follows: See response to #11.

**No documents were produced. Please produce the responsive documents.**

Request for Production #13 States: Produce any and all manuals, instructions, guidelines and other documents setting forth policies and procedures to be used by Defendant's employees with respect to collecting debts.

Defendant answered as follows: See Interrogatory #4 of Defendants answers to Plaintiffs first set of interrogatories.

**No documents were produced. Please produce the responsive documents.**

Request for Production #15 States: Produce any and all documents relating to any training that Defendant provides to its employees involved in making telephone calls to its customers, past customers, or prospective customers.

Defendant answered as follows: See Interrogatory #6 of Defendants answers to Plaintiffs first set of interrogatories.

**No documents were produced. Moreover, Interrogatory #6 was unrelated to training. Please produce the responsive documents.**

Request for Production #16 States: Produce any and all recordings, copies, transcriptions, or productions, in any medium, of communications or conversations, or attempted communications

or conversations, between Defendant and Plaintiff, and between Defendant and third parties in an attempt to collect the debt from Plaintiff.

Defendant answered as follows: See Exhibit #1.

**Exhibit #1 does not contain any of the requested documents. Please produce the responsive documents, including recordings of calls between Defendant and Plaintiff.**

Request for Production #17 States: Produce any and all documents, data, and recordings including, but not limited to, logs, notes, recordings, and computer printouts that reflect all of Defendant's communications and contacts with, and attempts to communicate or contact, Plaintiff.

Defendant answered as follows: See Exhibit #1.

**Exhibit #1 does not contain any of the requested documents. Please produce the responsive documents, including the call logs and recordings of calls between Defendant and Plaintiff.**

Request for Production #19 States: Produce any and all recordings, copies, transcriptions, or productions, in any medium, of communications or conversations, or attempted communications or conversations, between Defendant and Plaintiff.

Defendant answered as follows: See Exhibit #1.

**Exhibit #1 does not contain any of the requested documents. Please produce the responsive documents, including recordings of calls between Defendant and Plaintiff.**

A party has a duty to cooperate with discovery and violates that duty by providing evasive and incomplete answers. *Airtex Corp. v. Shelly Radiant Ceiling Co*., 536 F.2d 145, 155 (7th Cir. 1976). Fed. R. Civ. P. 34(b)(2)(B) states that in responding to a request for production of documents, "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." To date, Defendant has failed to produce the numerous aforementioned documents.

## Defendant's Initial Disclosures

Defendant has refused to serve Initial Disclosures, despite numerous requests from Plaintiff via email and telephone. The main purpose of Rule 26(a)(1) disclosures "is to accelerate the exchange

of basic information about the case and to eliminate the paperwork involved in requesting such information." *See* Advisory Committee Notes, Fed. R. Civ. P. 26. Initial disclosures should provide the parties with information essential to the proper litigation of all relevant facts and to eliminate surprise and promote settlement. *Id.* In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship with respect to the disclosure obligations." *Id.* "The goal of the initial disclosure requirement is to get out basic information about the case at an early point." *Stamps v. Encore Receivable Mgmt.*, 232 F.R.D. 419 (N.D. Ga. 2005) (quoting Wright, Miller, & Marcus, Federal Practice and Procedure: Civil 2d § 2053).

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure provides that a party must provide to the other parties:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Here, Defendant has failed to comply with Rule 26(a)(1)(A) (i) and (ii) because Defendant has refused to serve Initial Disclosures. Thus, Defendant has not listed the "…name and, if known, the address and telephone number…" of a single witness for Defendant. Nor has Defendant provided "a copy – or a description by category and location – of all documents… used to support its claims or defenses."

Pursuant to LR 26-6, please let me know when you are free to discuss Plaintiff's Rule 37 letter. I am free January 2-6, 2023, to discuss these issues on the phone.

Under the Federal Rules, discovery is permitted in civil actions of "any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). Therefore, Defendant has until January 6, 2023, to comply with Plaintiff's FRCP 37 letter below, otherwise Plaintiff will file a Motion to Compel. A motion to compel discovery may be made under Rule 37 where, as in this case, "another party fails to respond to a discovery request, or where a party's response is evasive or incomplete." Fed. R. Civ. P. 37(a)(2)-(3).

**Conclusion**

Defendant has until January 6, 2023, to comply with Plaintiff's FRCP 37 letter, otherwise Plaintiff will file a Motion to Compel.  FRCP 37 allows the court to impose a wide range of sanctions for discovery-related abuses.  *In re Seroquel Products Liability Litigation,* 244 F.R.D. 650, 656 (M.D. Fla. 2007).  The district court has broad discretion to enforce appropriate sanctions when a party fails to comply with discovery orders. Fed. R. Civ. P. 37; *see also In re Seroquel Products Liability Litigation,* 244 F.R.D. 650, 656 (M.D. Fla. 2007) citing to *United States v. Certain Real Property Located at Route 1,* 126 F.3d 1314, 1317 (11th Cir.1997).  FRCP 37(a)(5) provides for payment of attorney fees and costs to the moving party when a motion to compel is granted.  Fed. R. Civ. P. 37(a)(5), *see also Martinez v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 668241 (M.D. Fla. 2010) (citations omitted).  FRCP 37(a)(5)(A) requires courts to impose an award of expenses in connection with a discovery motion unless the court finds that one of the limited exceptions applies: (1) the moving party filed the motion before a good faith attempt to obtain the discovery, (2) the opposing party was substantially justified, or (3) other circumstances which make a sanctions award unjust. *Adelman v. Boy Scouts of Am.,* 276 F.R.D. 681, 699 (S.D. Fla. 2011).  Moreover, the Rule mandates an expense award (unless an exception applies) even when a party turns over discovery before being ordered to do so, so long as the materials were produced after the motion to compel is filed.  *Id.*

Once again, pursuant to LR 26-6, please let me know when you are free to discuss Plaintiff's Rule 37 letter.  I am free January 2-6, 2023, to discuss these issues on the phone.

Thank you,


Michael Bertucci

# EXHIBIT D

| | |
|---|---|
| **From:** | Mike Bertucci |
| **To:** | "Cliff Young" |
| **Subject:** | RE: Petrillo v. Pinnacle Services Rule 37 letter and LR26-6 conference |
| **Date:** | Thursday, January 5, 2023 4:01:25 PM |
| **Attachments:** | image001.png |

Hi Cliff,

I am writing to follow up on our call from this morning.

As we discussed, your client agreed to amend Interrogatory #7 to include the abbreviation "lmom" and "nml." I would also like to confirm what "ids" means for the note on 6/10/21 at 9:43.

Your client also agreed to amend Interrogatory #15 so it clearly indicates the chronology and methods of communications.

I would again ask for your client to amend Interrogatory #14 as the response does not include any facts as requested.

We also discussed the issue of Summit's letter which threatens to report the debt to the credit bureaus. Your client indicated that the debtor history report, at 6/18/21, 12:38, demonstrates that the account was reported because the note says "Automatic Debtor status change from ACT to DIS." Obviously, this note does not prove that the debt was reported to the credit bureaus as it is merely an account note. I would need something that actually shows the debt was reported to the bureaus- a confirmation from the bureaus or something from the software system that shows the debts are automatically reported. Your client explained that the bureaus no longer report disputed accounts, but I do not think that is true. I have recently seen many accounts listed as disputed through my work on FCRA (Fair Credit Reporting Act) cases.

Finally, your client mentioned that he did not think this was a consumer debt because my client's husband owns business similar to that of the original creditor, and therefore my client was engaged in some sort of corporate espionage. The invoice from the original creditor and the website for my client's business proves otherwise. The invoice shows that my client purchased botox services from Aesthetics Medical Training. Her husband's business does not sell botox or any other medical products. It only sells skin care products (like cream) and face masks. It is not a salon like Aesthetics Medical Training. They are not competitors. Is there anything else to support your client's theory? I am not seeing it.

Please provide amended discovery responses by January 6, 2023.

Thanks,

Mike

**Mike Bertucci | Attorney**  | My bio
4809 N Ravenswood Ave, Suite 419, Chicago, IL 60640

Tel: 312-755-6606 | Cell: 312-218-1130 | Fax: 312-253-4451



---

**From:** Mike Bertucci
**Sent:** Tuesday, January 3, 2023 5:14 PM
**To:** Cliff Young <cliffyounglaw@yahoo.com>
**Subject:** RE: Petrillo v. Pinnacle Services

Hi Cliff,

Let's do January 5 at 9:00am PST.

Best,

Mike

**Mike Bertucci | Attorney | My bio**
4809 N Ravenswood Ave, Suite 419, Chicago, IL 60640
Tel: 312-755-6606 | Cell: 312-218-1130 | Fax: 312-253-4451



---

**From:** Cliff Young <cliffyounglaw@yahoo.com>
**Sent:** Tuesday, January 3, 2023 4:44 PM
**To:** Mike Bertucci <mbertucci@agrusslawfirm.com>
**Subject:** Re: Petrillo v. Pinnacle Services

I'm available on Thursday, January 5th, from 9 to 11 am PST
On January 6th, I can do 10 am.  Do either of those dates work for you?


Cliff Young, Esq.
650 S. Rock Blvd., Ste #21-A
Reno, NV 89502
TEL: (775) 677-7777

FAX: (775) 786-3388

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

On Tuesday, January 3, 2023 at 01:59:56 PM PST, Mike Bertucci <mbertucci@agrusslawfirm.com> wrote:

Cliff,

I am again requesting your availability to discuss Plaintiff's Rule 37 letter pursuant to LR 26-6. As stated in my letter, I am available on January 4, 5, and 6. If I do not hear from you, we will have to file a motion to compel.

Thanks,

Mike

**Mike Bertucci | Attorney** | My bio

4809 N Ravenswood Ave, Suite 419, Chicago, IL 60640

Tel: 312-755-6606 | Cell: 312-218-1130 | Fax: 312-253-4451



**From:** Mike Bertucci <mbertucci@agrusslawfirm.com>
**Sent:** Monday, January 2, 2023 7:17 AM
**To:** Cliff Young <cliffyounglaw@yahoo.com>
**Subject:** Re: Petrillo v. Pinnacle Services

Cliff,

Please let me know when you are available to discuss Plaintiff's Rule 37 letter pursuant to LR 26-6. I would like to avoid court involvement.

Thanks,

Mike

**Mike Bertucci | Attorney**   | My bio

4809 N Ravenswood Ave, Suite 419, Chicago, IL 60640

Tel: 312-755-6606 | Cell: 312-218-1130 | Fax: 312-253-4451



---

**From:** Mike Bertucci <mbertucci@agrusslawfirm.com>
**Sent:** Wednesday, December 28, 2022 2:43 PM
**To:** Cliff Young <cliffyounglaw@yahoo.com>
**Subject:** Petrillo v. Pinnacle Services

Hi Cliff,

Please find attached Plaintiff's Rule 37 letter regarding Defendant's outstanding discovery. I am free next week to discuss.

Thanks,

Mike

**Mike Bertucci** | **Attorney**  | [My bio](My bio)

4809 N Ravenswood Ave, Suite 419, Chicago, IL 60640

Tel: 312-755-6606 | Cell: 312-218-1130 | Fax: 312-253-4451

