UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PRESCILLA PETRILLO,<br><br>                     Plaintiff,<br>     v.<br><br>PINNACLE SERVICES INC., D/B/A SUMMIT COLLECTION SERVICES,<br><br>                     Defendant. | Case No. 3:22-cv-00261-MMD-CLB<br><br>ORDER |

**I.    SUMMARY**

Plaintiff Prescilla Petrillo sued Defendant Pinnacle Services, Inc. d/b/a Summit Collection Services under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and related state laws, based on the ways in which Defendant tried to collect an alleged debt from her. (ECF No. 1.) Before the Court are the parties' motions for summary judgment. (ECF Nos. 27, 30.)[1] Because the Court finds that a threshold, genuine dispute of material fact precludes the entry of summary judgment in either party's favor—and as further explained below—the Court will deny both motions and refer this case to a settlement conference.

**II.    BACKGROUND**

The following facts are undisputed unless otherwise noted—the Court will discuss the pertinent disputed facts in the Discussion section below. Plaintiff purchased Botox Aesthetic from a business called Aesthetics Medical Training, LLC ("AMT"). (ECF Nos. 1 at 3, 9 at 3 (admitting to the allegation in ¶ 19 of Plaintiff's Complaint); *see also* ECF No. 30-17 at 2 (stating she purchased Botox).) Plaintiff received a letter from Defendant after

---

[1] The Court also reviewed the parties' responses and replies. (ECF Nos. 28, 31, 33, 35.) The parties' deadline to file the joint pretrial order is stayed as the parties await this order. (ECF No. 41.) This order resets that deadline.

she got the Botox stating that she owed AMT more money. (*Id.* at 2-3; *see also* ECF No. 30-1 (the letter).) Plaintiff and her husband disputed the amount that she owed AMT for the Botox. (ECF No. 30-17 at 3-4.) Plaintiff and her husband stopped hearing from Defendant around the end of June 2021. (*Id.* at 4.) Plaintiff filed this lawsuit regarding the disputed bill in June 2022. (ECF No. 1.)

**III. DISCUSSION**

The Court strikes Defendant's motion for failure to comply with LR 56-1 and the Court's Standing Order.[2] However, this is not a very severe sanction because Defendant raises substantially the same arguments in response to Plaintiff's motion that it does in its motion—so the Court will address the merits of Defendant's key arguments regardless. And while Defendant's response to Plaintiff's motion is hard to follow, the Court can discern that Defendant is attempting to raise the issue of Plaintiff's standing, disputes that the debt that started this case arose out of a transaction primarily for personal, family, or household purposes, and disputes that it violated specific provisions of the FDCPA. (ECF No. 33.) The Court will accordingly address standing first, then explain why it finds there

---

[2] "Motions for summary judgment and responses thereto must include a concise statement setting forth each fact material to the disposition of the motion that the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence on which the party relies." LR 56-1. Defendant's motion does not comply with this rule because it does not concisely set forth any facts, and does not clearly or specifically cite the evidence it relies on to support the alleged facts it sprinkles throughout its motion. Moreover, in its Standing Order, the Court states its expectation that all counsel who appear before it familiarize themselves with the Local Rules, and warns that any filings that do not comply with the Local Rules may be stricken. The Court of course expects all counsel who appear before it to have read its Standing Order, and in this case, like in every case it presides over, the Court issued an order directing counsel to it. (ECF No. 4.) Defendant accordingly knew or should have known about the content of the Court's Standing Order and filed a motion that complied with the pertinent local rule. Thus, the Court sanctions Defendant by striking Defendant's motion for noncompliance with the Local Rules, *see* LR IA 11-8(c), (e) (providing for the possibility of sanctions when an attorney violates the Local Rules or a Court order), the Court's Standing Order, and under its inherent powers because Defendant violated the Court's standing order, *see Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021) ("When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order . . .").

is a genuine dispute of material fact as to whether this debt is a debt as that term is defined in the FDCPA, and then addresses a few remaining issues.

### A.   Standing

Defendant states that Plaintiff lacks standing, while also acknowledging that, "Plaintiff now has attested to damages on May 30, 2023 in her affidavit." (ECF No. 33 at 16.) Similarly, Plaintiff points to her declaration to establish her standing (ECF No. 30-17), where she swears in pertinent part that she spent time researching credit reporting rules and attorneys who could help her dispute the negative report she understood Defendant was going to place on her credit report after her dispute with Defendant about the extra charges Defendant presented to her (*id.* at 4). She further swears that she became stressed after she learned nearly a year later that AMT was still threatening to sue her, suffering loss of sleep, lost appetite, migraines, and decreased interest in leaving the house. (*Id.* at 4-5.) Defendant does not offer any evidence to dispute this. (ECF No. 33.) And as Plaintiff points out (ECF No. 35 at 18-20), other courts have found similar declarations sufficient to confer standing in FDCPA cases, including against Defendant. *See Salazar v. ABC Auto. Invs., LLC*, Case No. 2:19-cv-00039-RFB-BNW, 2019 WL 2928756, at *2 (D. Nev. July 8, 2019); *Inserra v. Pinnacle Servs. Inc.*, Case No. 3:22-CV-00300-CLB, 2023 WL 3342609, at *5 (D. Nev. May 10, 2023), *reconsideration denied*, Case No. 3:22-CV-00300-CLB, 2023 WL 4041636 (D. Nev. May 31, 2023) ("Taken together, [the plaintiff's] allegations [in their sworn declaration] are sufficient to establish Article III standing[,]" contrary to Defendant's challenge in that case). The Court accordingly finds that Plaintiff has standing in this case.

### B.   'Debt'

The parties agree that Plaintiff is a consumer and Defendant is a debt collector. (ECF Nos. 30 at 5, 33 at 8 (replying N/A to these two undisputed facts, but not clearly disputing them, whereas Defendant otherwise disputes facts proffered by Plaintiff).) Indeed, Plaintiff is a consumer, and Defendant is a debt collector—and the Court so finds. (ECF No. 30-15 at 9 (agreeing that Plaintiff is a consumer), 11-12 (agreeing that

3

1 Defendant is a debt collector).) However, Defendant disputes that the debt that eventually led to this case is a debt as debt is defined in the FDCPA because Defendant contends that Plaintiff purchased Botox from AMT as some sort of corporate espionage. (ECF No. 33 at 8.) Plaintiff counters that Defendant admitted in its answer that this case is about consumer debt. (ECF No. 35 at 2 n.1.) The Court finds a genuine dispute of material fact exists as to whether Plaintiff's disputed purchase of Botox from AMT is a 'debt' as the FDCPA defines that term.

To start, the Court does not find that Defendant admitted in its answer that this case is about a 'debt' as that term is defined in the FDCPA. Plaintiff points to ¶ 19 of Defendant's answer, in which Defendant admits to the allegations in ¶ 19 of Plaintiff's Complaint. (*Id.*). ¶ 19 of Plaintiff's Complaint reads, "Defendant is attempting to collect a consumer debt from Plaintiff allegedly originating with Aesthetics Medical Training, LLC." (ECF No. 1 at 3.) But Plaintiff declines to mention that Defendant denies ¶ 20 of Plaintiff's Complaint (ECF No. 9 at 3), which reads, "[t]he alleged debt at issue arises from transactions for personal, family, and household purposes." (ECF No. 1 at 3.) In the FDCPA, "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Thus, the best reading of Defendant's answer is that Defendant disputes whether this is a 'debt,' consistent with Defendant's response to Plaintiff's motion.

Moreover, the evidence Plaintiff points to in arguing it is undisputed that this case is about a 'debt' does not meet Plaintiff's initial summary judgment burden. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (explaining that the moving party bears the burden of showing that there are no genuine issues of material fact). Plaintiff specifically relies on four pieces of evidence to establish that this case is about a consumer debt within the ambit of FDCPA: her declaration, an invoice she eventually saw

a copy of, the deposition of Defendant's principal Brian Chew, and the deposition of Defendant's debt collector Matt Lemley. (ECF No. 30 at 4 (citing exhibits 1, 2, 3, and E).) The Court will analyze each of these pieces of evidence in turn.

The Court begins with Plaintiff's declaration. In it, Plaintiff swears that, "[t]he sole purpose of my purchase was to receive Botox injections from AMT." (ECF No. 30-17 at 2.) She goes on to explain that she attended one session at AMT and got some Botox injections, but there was some Botox left over after the session. (*Id.*) So she attempted to schedule another session to use it, but was not able to find a good time. (*Id.*) This is reflected in the invoice she eventually saw a copy of, which appears to give her credit back for unused Botox. (ECF No. 30-8.) Of course, the invoice does not say whether the Botox was for personal or household purposes. (*Id.*) In contrast, Chew testified to his belief that Plaintiff purchased the Botox for "corporate espionage" (ECF No. 30-15 at 8), and therefore does not believe it was for personal use (*id.*). And Lemley testified that he thought someone getting Botox would generally use the Botox for personal use, but said he ultimately did not know—"I don't know if you can buy Botox and take it somewhere else and do something with it." (ECF No. 30-16 at 7-8.) He also later said he did not have any evidence it was for corporate espionage, and also said he did not have any evidence that the debt at issue in this case was for something other than personal purposes. (*Id.* at 12.) He thus does not appear to know why Plaintiff purchased the Botox. (*See id.* at 7-8, 12.)

To summarize, Plaintiff swears the Botox was for personal purposes, but Chew does not believe her, instead believing she bought the Botox for commercial purposes. The invoice does not indicate either way, and Lemley says he does not know. So at this stage, the Court really only has the conflicting testimony of Plaintiff and Chew—and they say different things. That makes summary judgment inappropriate because, particularly drawing all inferences in Defendant's favor as the nonmoving party, *see Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted), the Court cannot make credibility determinations or resolve disputed facts, *see, e.g.*,

*Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) ("credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") (citation omitted). The Court accordingly finds there is a genuine factual dispute.

This genuine dispute is material because it could affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Indeed, even Plaintiff correctly argues that whether "the debt arises out of a transaction entered into primarily for personal, family, or household purposes" is an element of its FDCPA claim. (ECF No. 30 at 13 (citing 15 U.S.C. § 1692a(5); (3)).) This issue must accordingly be resolved before the Court can fully resolve the merits of Plaintiff's FDCPA claim.[3]

### C.     Remaining Issues

Because the Court finds a genuine issue of material fact regarding whether this case arises from a 'debt,' the Court does not address the parties' competing arguments as to whether Defendant violated specific provisions of the FDCPA. If this case does not arise from a 'debt,' Plaintiff cannot prevail on her FDCPA claim. *See, e.g.*, *McNair v. Maxwell & Morgan PC*, 893 F.3d 680, 682-83 (9th Cir. 2018) (suggesting by contrasting two precedential cases and analyzing the statute that a 'debt' as defined in the FDCPA is an element of any viable FDCPA claim). As further specified below, the Court refers this case for a settlement conference and sets a new deadline to file the joint pretrial order in the event this case does not settle at the settlement conference.

This disposition also renders Plaintiff's request for entry of judgment, certain damages in her favor, and attorneys' fees premature, so those requests are denied without prejudice. (ECF No. 30 at 30.)

And to the extent Defendant seeks sanctions based on its contention that Plaintiff's case is frivolous (ECF No. 33 at 17-18), the Court denies that request without prejudice

---

[3]Plaintiff does not move for summary judgment on her claim under the Nevada Deceptive Trade Practices Act. (ECF No. 30 at 3 n.5.)

because this case is not frivolous given the content of Plaintiff's declaration (ECF No. 30-17).

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 27) is denied and stricken for noncompliance with the Court's Standing Order and Local Rules.

The Clerk of Court is directed to strike Defendant's motion for summary judgment (ECF No. 27).

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 30) is denied.

It is further ordered that the Court finds it appropriate to refer this case to United States Magistrate Judge Carla Baldwin to conduct a settlement conference under LR 16-5—and the case is so referred. If the parties do not settle at the settlement conference, the Joint Pretrial Order is due within 30 days of the date the settlement conference is held.

DATED THIS 9th Day of January 2024.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE